**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------ x

**JULIET SINGH,**

**Plaintiff,**

**-against-**

**1:25-CV-00056 (AMD) (TAM)**

**UNITED STATES OF AMERICA,**

**Defendant.**

------------------------------------------------------ x

**SUR-REPLY IN SUPPORT OF PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS


**PRELIMINARY STATEMENT** ........................................ 1

**ARGUMENT** ........................................ 2

I. I.R.C. § 7508A is Clear and Provides a Mandatory Postponement from January 20, 2020, through July 10, 2023 ........................................ 2

A. FEMA Specified the "Latest Incident Date" of the COVD-19 Disaster as May 11, 2023, by Amendment ........................................ 2

B. "Latest Incident Date" Means the Last Day of the Incident, not a Calendar Date Printed on the Declaration ........................................ 3

C. The "Mandatory 60-day Extension" Heading Refers to a Minimum, not a Maximum.. 4

II. "In the Same Manner" Refers to the Acts Postponed, Not the Duration of the Postponement. ........................................ 4

III. The 2021 Amendment to Section 7508A Changed the Law Prospectively, It Did Not Clarify What the 2019 Version Always Meant ........................................ 6

IV. I.R.C. § 6511(b)(2) Does Not Bar Ms. Singh's Refund ........................................ 8

**CONCLUSION** ........................................ 10

# TABLE OF AUTHORITIES

**Cases**


*Abdo v. Commissioner*, 162 T.C. 148 (2024). .......... 4, 5, 6
*Borenstein v. Commissioner*, 919 F.3d 746 (2d Cir. 2019) .......... 9, 10
*Bufkin v. Collins*, 604 U.S. 369 (2025). .......... 7
*Comm'r v. Lundy*, 516 U.S. 235 (1996) .......... 9
*Kwong v. United States*, 179 Fed. Cl. 382 (2025). .......... 3, 5, 6, 7
*Landgraf v. USI Film Products*, 511 U.S. 244 (1994). .......... 7


**Statutes**


I.R.C. § 7508(a)(1)(D) .......... 5, 8
I.R.C. § 7508(a)(1)(E). .......... 5, 8
I.R.C. § 7508A(d)(1)(A) (2019) .......... 4
I.R.C. § 7508A(d)(1)(A) (2021) .......... 7
I.R.C. § 7508A(d)(1)(B) (2021). .......... 7
I.R.C. § 7508A(d)(5) (2019) .......... 6
I.R.C. § 7508A(a) (2019). .......... 5
I.R.C. § 7508A(d)(1) (2019) .......... 2
I.R.C. § 7508A(d)(1)(B) (2019). .......... 3, 4
Pub. L. No. 117-58, § 80501(b), 135 Stat. 429, 1335 (2021) .......... 7
Pub. L. No. 117-58, § 80501, 135 Stat. 429, 1335 (2021). .......... 7


**Other Authorities**


California; Major Disaster and Related Determinations, 90 Fed. Reg. 6,041 (Jan. 17, 2025) .......... 2
H.R. Rep. No. 116-379 (2020). .......... 7
IRS Chief Counsel Advice 202053013 (Sept. 25, 2020) .......... 9
IRS Chief Counsel Advice 202053015 (Oct. 15, 2020) .......... 9
Major Disaster Declarations and Related Determinations: Expiration of COVID-19-Related Measures, 88 Fed. Reg. 8,884 (Feb. 10, 2023). .......... 3
Nat'l Taxpayer Advocate, 2023 Purple Book, Leg. Rec. No. 57 (2023) .......... 10
Nat'l Taxpayer Advocate, 2025 Purple Book, Leg. Rec. No. 55 (2025) .......... 10
Nat'l Taxpayer Advocate, 2026 Purple Book, Leg. Rec. No. 56 (2026) .......... 10
New York; Major Disaster and Related Determinations, 77 Fed. Reg. 69,647 (Nov. 20, 2012) .......... 2
New York; Major Disaster and Related Determinations, 85 Fed. Reg. 20,702 (Apr. 14, 2020) .......... 3
Puerto Rico; Major Disaster and Related Determinations, 82 Fed. Reg. 46,820 (Oct. 6, 2017) .......... 2
Puerto Rico; Major Disaster and Related Determinations, 85 Fed. Reg. 6,964 (Feb. 6, 2020) .......... 2
Texas; Major Disaster and Related Determinations, 82 Fed. Reg. 42,691 (Sept. 11, 2017) .......... 2


**Regulations**


Treas. Reg. § 301.7508A-1(f) .......... 8, 9

## PRELIMINARY STATEMENT

The Government moves to dismiss Ms. Singh's refund claim for lack of subject-matter jurisdiction, arguing that her October 19, 2022 Form 1040-X was untimely and that she never filed a valid administrative claim for refund. The Government is wrong on both counts.

Ms. Singh filed a valid administrative refund claim on July 25, 2019—within the statutory limitations period—which the IRS received, acknowledged, processed, and ultimately formally disallowed. Her Form 1040-X, filed after the IRS invited her to formalize her claim, relates back to July 25, 2019, because it rests on the same set of facts and circumstances that Ms. Singh addressed from the outset: that she was the victim of a sophisticated online romance scam. The IRS's own conduct—treating her letter as a claim, issuing correspondence about it for three years, and then formally disallowing it—forecloses the Government's argument that no administrative claim was ever filed. These arguments are set forth fully in Plaintiff's Opposition. *See* ECF No. 17.

This Sur-Reply addresses only the single issue on which the Court granted leave: whether I.R.C. § 7508A(d) independently renders Ms. Singh's Form 1040-X timely and permits a refund of the 2017 taxes she paid on April 15 and June 14, 2018, regardless of the informal claim analysis. Under the 2019 version of section 7508A(d), the only version that applies to the COVID-19 disaster—as the Government itself has conceded—the mandatory postponement period did not expire until July 10, 2023. Ms. Singh's Form 1040-X, filed on October 19, 2022, was filed within the postponed statute of limitations and reaches her 2018 tax payments. The Government's Motion to Dismiss should be denied.

## ARGUMENT

### I. I.R.C. § 7508A is Clear and Provides a Mandatory Postponement from January 20, 2020, through July 10, 2023

#### A. FEMA Specified the "Latest Incident Date" of the COVD-19 Disaster as May 11, 2023, by Amendment

The defendant argues that Congress intended section 7508A(d) to be tied exclusively to dates contained in a single disaster declaration,[1] relying on the statute's reference to "the period [. . .] beginning on the earliest incident date specified in the declaration to which the disaster area referred to" and "ending on the date which is *60 days after the latest incident date so specified*." I.R.C. § 7508A(d)(1) (2019) (emphasis added). This interpretation, however, cannot be reconciled with FEMA's established practice of issuing initial disaster declarations without specifying an end date. FEMA frequently defines incident periods as "beginning on [date], and continuing," and specifies the latest incident date later, by amendment, after the disaster and its effects have concluded.[2] This practice reflects the realities of disaster response; at the time of an initial declaration, FEMA cannot always know when disaster conditions will end. For example, a hurricane may pass within days, but flooding, power outages, structural instability, storm damage, and other consequences can often persist for weeks or months. FEMA therefore does not always close the incident period until those conditions have subsided and often determines the end date after the fact. When FEMA declares a disaster period as beginning on a particular date "and continuing," it signifies that the incident period remains ongoing until FEMA

---

[1] Defendant's Reply at 4–6, ECF No. 20

[2] *See* e.g; New York; Major Disaster and Related Determinations, 77 Fed. Reg. 69,647 (Nov. 20, 2012) (Hurricane Sandy, DR-4085-NY) ("beginning on October 27, 2012, and continuing"), *available here*; Texas; Major Disaster and Related Determinations, 82 Fed. Reg. 42,691 (Sept. 11, 2017) (Hurricane Harvey, DR-4332-TX) ("beginning on August 23, 2017, and continuing"), *available here*; Puerto Rico; Major Disaster and Related Determinations, 82 Fed. Reg. 46,820 (Oct. 6, 2017) (Hurricane Maria, DR-4339-PR) ("beginning on September 17, 2017, and continuing"), *available here*; Puerto Rico; Major Disaster and Related Determinations, 85 Fed. Reg. 6,964 (Feb. 6, 2020) (Earthquakes, DR-4473-PR) ("beginning on December 28, 2019, and continuing"), *available here*; California; Major Disaster and Related Determinations, 90 Fed. Reg. 6,041 (Jan. 17, 2025) (Wildfires and Straight-Line Winds, DR-4856-CA) ("beginning on January 7, 2025, and continuing"), *available here*.

determines otherwise; this simply means that the "latest incident date" is yet to be specified. As *Kwong* recognized, if the COVID-19 declaration was intended to include only January 20, 2020, as an incident date, the declaration would not have also said "and continuing." *Kwong v. United States*, 179 Fed. Cl. 382, 388 (2025). The word "continuing" means continuing; it cannot be treated as surplusage or ignored simply because FEMA had not yet identified a final incident date. *Id.*

The defendant correctly observes that the COVID-19 pandemic was an unprecedented open-ended disaster. But that observation misses the point. FEMA's decision to declare the incident period as "beginning on January 20, 2020, and continuing" [3] followed its established practice utilized when the duration of a disaster cannot yet be determined. Congress legislated with this practice in mind when it codified section 7508A(d); the statute clearly provides that the mandatory postponement period begins on the earliest incident date FEMA declares and ends "60 days after the latest incident date so specified." I.R.C. § 7508A(d)(1)(B) (2019). Nothing in the statute requires that the "latest incident date so specified" appear in the initial declaration, as opposed to in a later amendment. For COVID-19, FEMA specified the beginning of the incident period in its initial declaration and later specified the latest incident date as May 11, 2023.[4]

### B. "Latest Incident Date" Means the Last Day of the Incident

The defendant argues that the Court must disregard the phrase "and continuing" in the initial COVID-19 declaration because it "is quite literally not a date." But that argument assumes the impossible: that FEMA could have determined the end date of an unprecedented global pandemic just as it began. This uncertainty is exactly why the declaration stated that the incident

[3] New York; Major Disaster and Related Determinations, 85 Fed. Reg. 20,702 (Apr. 14, 2020).
[4] Major Disaster Declarations and Related Determinations: Expiration of COVID-19-Related Measures, 88 Fed. Reg. 8,884 (Feb. 10, 2023).

period was "continuing." The statute says "latest incident date," meaning the last day the incident occurred, not the latest date[5] printed on the face of the declaration at the time it was signed. If Congress meant the latter, it would have said so. The statute is specific: the mandatory extension ends "60 days after the latest incident date so specified," and FEMA specified May 11, 2023 as the latest incident date. The mandatory extension therefore ran through July 10, 2023. Under the defendant's reading, the mandatory postponement would have expired on March 20, 2020, just seven days after the President declared a national emergency, and the same day the New York disaster declaration was signed, giving New York taxpayers zero days of relief.

### C. The "Mandatory 60-day Extension" Heading Refers to a Minimum, not a Maximum.

The defendant also argues that subsection (d)'s heading, "Mandatory 60-day extension," caps the total postponement period at 60 days. But, as *Abdo* recognized while interpreting section 7508A, statutory titles and headings cannot limit the plain meaning of operative text. *Abdo v. Commissioner*, 162 T.C. 148, 164 (2024). The heading simply describes the statute's guarantee that affected taxpayers' deadlines are automatically postponed from the earliest to the latest incident date, *plus* 60 days. I.R.C. §§ 7508A(d)(1)(A) & (B) (2019).

## II. "In the Same Manner" Refers to the Acts Postponed, Not the Duration of the Postponement.

The defendant argues that subsection (d)'s "in the same manner as a period specified under subsection (a)" caps the mandatory postponement period at subsection (a)'s one-year limit. That interpretation is wrong. Subsection (a) provides in relevant part,

> the Secretary may specify a period of up to 1 year that may be disregarded in determining, under the internal revenue laws, in respect of any tax liability of such taxpayer—(1) whether any of the acts described in paragraph (1) of section

---

[5] The noun "date" means "the time at which an event occurs" and "duration" is defined as "the time during which something exists or lasts." *Date*, Merriam-Webster Dictionary; *Duration*, Merriam-Webster Dictionary.

> 7508(a) were performed within the time prescribed therefor […], (2) the amount of any interest, penalty, additional amount, or addition to the tax for periods after such date, and (3) the amount of any credit or refund. I.R.C. § 7508A(a) (2019).

The defendant focuses on "may specify a period of up to 1 year" and reads that durational cap into subsection (d). But "the same manner" does not reference the length of the postponement. It identifies *what* is disregarded during the postponement period—the acts enumerated in section 7508(a)(1), which include the allowance of a refund and the filing of a refund claim.[6] *Kwong* considered and rejected defendant's argument, holding that "nothing in subsection (d) mentions or implies a one-year limit," and that the "manner" in which the period is disregarded, discussed in subsection (a), is more evidently not the length of time, but the types of actions that are delayed. 179 Fed. Cl. at 388.

The Tax Court reached the same conclusion, holding that the "in the same manner" language is not "reasonably susceptible" of being interpreted to reference the Secretary's discretionary grant under subsection (a), instead, it "provides for an unambiguously self-executing postponement period that incorporates all of the acts referenced by section 7508A(a)." *Abdo*, 162 T.C. at 164. The Court further explained that the deadlines for the acts described in section 7508(a)(1) "*may*" be disregarded under section subsection (a), but "*shall be disregarded*" under subsection (d). *Id.* 2(emphasis added). The contrast between "may" and "shall" demonstrates that subsection (d) borrows the *acts* from subsection (a)—not its durational limit.

Reading subsection (d) without importing subsection (a)'s durational cap is not reading it "in a vacuum;"[7] subsection (d)(5) clearly addresses the interaction between the two provisions. It provides that the mandatory postponement period "shall be in addition to (or concurrent with

[6] *See* I.R.C. §§ 7508(a)(1)(D) & (E) (2020) (identifying, among postponed acts, "Allowance of a credit or refund of any tax" and "Filing a claim for credit or refund of any tax").
[7] Defendant's Reply at 6.

[…]) *any period specified under subsection (a)*…" I.R.C. § 7508A(d)(5) (2019) (emphasis added). If subsection (d) were capped by subsection (a)'s one-year limit, there would be no reason for Congress to provide that one may operate "in addition to" the other. As *Abdo* held, this "broad and inclusive language" permits the mandatory extension under subsection (d) to "operate independently from any discretionary extension" under subsection (a). 162 T.C. at 166. Accordingly, the phrase "in the same manner" in subsection (d) incorporates the categories of acts whose deadlines are disregarded; it does not import subsection (a)'s one-year durational cap, which by its own terms constrains only the Secretary's discretionary authority.[8]

## III. The 2021 Amendment to Section 7508A Changed the Law Prospectively, It Did Not Clarify What the 2019 Version Always Meant

After previously conceding that the 2019 version of section 7508A applies,[9] the defendant now argues that the 2021 amendment was a clarification of it.[10] It was not. Congress itself described the amendment as a "modification,"[11] and *changed* subsection (d)'s postponement period to begin "on the earliest incident date specified" and end "60 days after the later of *such earliest incident date* or the *date such declaration was issued*." I.R.C. §§ 7508A(d)(1)(A) & (B) (2021) (emphasis added). "Such earliest incident date" and the "date such declaration was issued" are clearly both different than "the latest incident date so specified." And "that Congress had to amend the statute implies that Congress changed the statute's

---

[8] The defendant also invokes the Major Questions Doctrine, arguing that plaintiff's reading gives FEMA "the power to grind tax administration to a halt." Defendant's Reply at 10. That doctrine concerns agency exercises of discretionary power, not congressionally mandated statutory extensions. Section 7508A(d) is self-executing—it operates by force of statute, not agency discretion. As *Kwong* held, "the executive branch is supposed to work together; concerns that one agency will make policy for another should be worked out within the executive branch." 179 Fed. Cl. at 389. Moreover, the defendant's concern applies equally whether the postponement is 60 days or longer—Congress enacted subsection (d) to mandatorily and automatically postpone deadlines without any action by the Treasury Secretary.

[9] *See Kwong*, 179 Fed. Cl. at 385.

[10] Defendant's Reply at 9 (arguing that "Congress' 2021 amendment clarified its intent for a limited mandatory extension period").

[11] Pub. L. No. 117-58, § 80501, 135 Stat. 429, 1335 (2021) ("*Modification* of Automatic Extension of Certain Deadlines in the Case of Taxpayers Affected by Federally Declared Disasters") (emphasis added).

meaning." *Kwong*, 179 Fed. Cl. at 388. If the 2019 version already limited the postponement to 60 days anchored to a date in the initial declaration, Congress would not have needed to amend it in 2021. When Congress amends a statute, "it intends its amendment to have a real and substantial effect." *Id.* (quoting *Bufkin v. Collins*, 604 U.S. 369, 386 (2025)).

The defendant also suggests Congress's decision not to make the amendment retroactive was an oversight. It was not. Congress limited the amendment to disasters declared *after* its enactment,[12] knowing that the COVID-19 disaster had been declared 665 days earlier and was still ongoing. That was a deliberate decision to allow the 2019 version to govern pre-existing disasters. Absent clear congressional intent, which is not present here, courts do not give retroactive effect to statutory amendments. *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994).

The House Ways and Means Committee enacted subsection (d) in 2019 so that "the certainty and additional time provided by an automatic extension of filing deadlines for taxpayers affected by federally declared disasters [would] ease the burden of tax compliance for taxpayers dealing with the hardship of disaster recovery." H.R. Rep. No. 116-379, at 99 (2020). The defendant focuses on "certainty" but ignores "relief." It is the postponement of a deadline—the providing of additional time—that gives relief to taxpayers burdened by disaster. A 3.5 year pandemic may not have been on Congress' radar in 2019, but the statute it enacted provided mandatory, automatic relief throughout the entire duration of the pandemic—and 60 days after. Congress' choice not to make the 2021 amendment retroactive is clear.

---

[12] Pub. L. No. 117-58, § 80501(b), 135 Stat. 429, 1335 (2021) ("The amendment made by this section shall apply to federally declared disasters declared *after* the date of enactment of this Act [Nov. 15, 2021].") (emphasis added).

## IV. I.R.C. § 6511(b)(2) Does Not Bar Ms. Singh's Refund

The defendant argues that even if Ms. Singh's 1040-X is deemed timely, she is not entitled to a refund because "section 7508A never reached section 6511(b)(2) until the 2025 amendment." Defendant's Reply at 11. As a threshold matter, if the Court agrees that Ms. Singh's July 25, 2019 letter constitutes a valid informal claim, the defendant's argument is moot—her claim was filed within the original three-year period. Regardless, the defendant is clearly mistaken. All deadlines falling within the postponement period were extended through July 10, 2023, including the "[*a*]*llowance of a* credit or *refund of any tax*" and the "[*f*]*iling a claim for* credit or *refund of any tax.*" I.R.C. §§ 7508(a)(1)(D) & (E).

Section 6511(b)(2)(A) applies to Ms. Singh's timely refund claim and limits the amount of her refund to tax paid within "3 years plus the period of any extension of time for filing the return." When measuring this lookback, "the period from [the end of the postponement] back to [the beginning of the postponement] is disregarded."[13] Ms. Singh's tax was paid on April 15 and June 14, 2018. The postponement period, January 20, 2020, through July 10, 2023, is disregarded when measuring the three-year lookback from her October 22, 2022 claim. Therefore, both payments fall within the lookback. Just as the deadline to file the claim was postponed to July 10, 2023, the lookback period was postponed with it, because the entire refund mechanism (filing, allowance, and amount) was subject to the postponement under section 7508A.

This Circuit's precedent compels this result; the lookback provisions and the refund statutes must be read so that they work together, not in a way that creates an arbitrary "black hole" into which a taxpayer's refund disappears. *Borenstein v. Commissioner*, 919 F.3d 746, 752

---

[13] Treas. Reg. § 301.7508A-1(f), Ex. 5.

(2d Cir. 2019). In *Borenstein*, the Second Circuit reversed because the government's interpretation—the same interpretation the defendant advances here—because it "unreasonably harms the taxpayer and is not required by the statutory language," converting "an intended benefit into a handicap." *Id.* (quoting *Comm'r v. Lundy*, 516 U.S. 235, 253 (1996) (Stevens, J., dissenting)). The Court further held that "where the words of a tax statute are doubtful, the doubt must be resolved against the government and in favor of the taxpayer." *Id.* It cannot be that section 7508A postpones a taxpayer's deadline to file a refund claim, but leaves the lookback period frozen—that the claim would be timely, but the refund would vanish. This is the "black hole" *Borenstein* rejected.

The 2025 amendment to section 7508A adding subsection (f) does not change this analysis. The IRS Chief Counsel, relying on the regulation,[14] agreed with the result argued for here,[15] that the lookback period is also postponed. But the IRS could not get its own house in order. It ignored its own regulation and analysis, enforced the opposite position,[16] and denied refunds to disaster victims whose claims were timely. The National Taxpayer Advocate identified this as a "trap for well-intended taxpayers who relied on disaster relief," and repeatedly recommended that Congress intervene.[17] Congress agreed and enacted section 7508A(f), not to create a new right, but to stop the IRS from denying an existing one. But even if there were any ambiguity, *Borenstein* holds that a court does not resolve it by eliminating the taxpayer's refund. 919 F.3d at 752. Ms. Singh's Form 1040-X was timely filed, the lookback period reaches her 2018 tax payments, and her refund is not barred.

---

[14] *See* Treas. Reg. § 301.7508A-1(f), Ex. 5.
[15] *See* IRS Chief Counsel Advice 202053015 (Oct. 15, 2020).
[16] *See* IRS Chief Counsel Advice 202053013 (Sept. 25, 2020)(arguing, despite the "harsh result for many taxpayers" that the section 7508A's postponement period does not "extend" the lookback period.).
[17] *See* Nat'l Taxpayer Advocate, 2023 Purple Book, Leg. Rec. No. 57 (2023), *available here*; *see also* Nat'l Taxpayer Advocate, 2025 Purple Book, Leg. Rec. No. 55 (2025), *available here*; *see also* Nat'l Taxpayer Advocate, 2026 Purple Book, Leg. Rec. No. 56 (2026), *available here*.

## CONCLUSION

Regardless of whether Ms. Singh timely filed a valid administrative refund claim on July 25, 2019, which the IRS acknowledged, processed, and formally disallowed, the automatic and mandatory postponement under I.R.C. § 7508A renders her October 18, 2022 Form 1040-X timely as a matter of law and her refund of taxes paid in 2018 is not barred. The Court has subject-matter jurisdiction, and the Government's Rule 12(b)(1) motion should be denied in its entirety.

Dated: June 10, 2026

Respectfully Submitted,

Elizabeth Maresca

ELIZABETH MARESCA
LINCOLN SQUARE LEGAL SERVICES, INC.
Fordham Law School
150 W. 62nd Street, 9th Floor
New York, NY 10023
212-636-7353
emaresca@lsls.fordham.edu
Attorneys for Plaintiff

Abbie Pike
Ginikachi Okeke
Mariah Watkins
Kyle Blake
Lauren Sobota
Tyler Voelzke
*Legal Interns*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this Sur-Reply complies with the length limit of Local Civil Rule 7.1(c) because it was filed by an attorney and prepared with a computer, and excluding the parts of the document exempted by that Local Civil Rule 7.1, it contains 3,192 words out of a limit of 3,500.

Elizabeth Maresca
_______________________________
Elizabeth Maresca
Lincoln Square Legal Services, Inc.
*Attorneys For Plaintiff*