UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JULIET R. SINGH, *Plaintiff,* v. UNITED STATES OF AMERICA, *Defendant.* | No. 1:25-cv-00056-AMD-TAM<br><br>District Judge Ann M. Donnelly<br>Magistrate Judge Taryn A. Merkl |

**UNITED STATES' ANSWER TO AMENDED COMPLAINT**

The defendant United States of America hereby submits the following Answer to the plaintiff Juliet R. Singh's Amended Complaint (ECF No. 13). Each factual allegation from the Amended Complaint is reproduced in italic font with the United States' response below.

***JURISDICTION AND VENUE***

1. *This is a suit arising under the laws of the Internal Revenue Code for the refund of income taxes and interest erroneously and illegally assessed against and collected from the Plaintiff.*

**ANSWER:** This paragraph describes the nature of the plaintiff's suit and requires no response. To the extent that it requires a response, admit that the plaintiff is seeking a refund of income tax and interest and that the suit arises under the Internal Revenue Code and deny the remaining allegations in this paragraph.

2. *This Court has original subject matter jurisdiction over all claims pursuant to 28 U.S.C. § 1346(a)(1) as an action arising under 26 U.S.C. § 7422.*

**ANSWER:** This paragraph constitutes a legal conclusion to which no response is required. To the extent that it requires a response, deny but acknowledge that the Court has decided this issue in favor of the plaintiff in its order denying the United States' motion to dismiss.

3. *Venue is appropriate under 28 U.S.C. § 1391(e) as the Plaintiff resides in Queens, New York.*

**ANSWER:** This paragraph constitutes a legal conclusion to which no response is required. To the extent that it requires a response, admit.

## *PARTIES*

4. *Plaintiff, Juliet Singh, is a citizen of the United States and resides in Queens Village, New York.*

**ANSWER:** Admit.

5. *The Defendant is the United States of America.*

**ANSWER:** Admit.

## *STATEMENT OF FACTS*

***Ms. Singh's 2017 Theft Loss***

6. *In violation of both New York State and United States laws, an internet scammer defrauded Ms. Singh, the Plaintiff in this action, of $100,000, which was withdrawn from her Fidelity Traditional IRA in 2017.*

**ANSWER:** This paragraph constitutes a legal conclusion and requires no response. To the extent a response is required, the United States lacks information or knowledge sufficient to form a belief as to the truth of this paragraph.

7. *Ms. Singh was the victim of an online dating scam. A scammer, who professed his devotion and love, persuaded her to withdraw funds from her IRA under the false pretense that the money would be used for his mother's medical care.*

**ANSWER:** The United States lacks information or knowledge sufficient to form a belief as to the truth of this paragraph.

8. *On or around October 24, 2017, Ms. Singh withdrew $100,000 from her IRA and transferred the funds to the scammer for him to use for his mother's critical hospital treatments.*

**ANSWER:** Admit that the plaintiff withdrew $100,000 from her IRA on or about October 24, 2017. Admit that the plaintiff sent the funds by wire transfer to bank accounts controlled by the alleged scammer but aver that the transfer was over multiple transactions. The United States lacks information or knowledge sufficient to form a belief as to the truth of the rest of the allegations in this paragraph.

9. *In the weeks that followed, Ms. Singh grew increasingly concerned when the scammer stopped responding to her messages. As her worry deepened, she frantically tried to reach him, exhausting every possible means of contact and pursuing every avenue she could think of to locate him.*

**ANSWER:** The United States lacks information or knowledge sufficient to form a belief as to the truth of this paragraph.

10. *During her search, she investigated the name the scammer had been using and ultimately spoke directly with the real person whose identity had been misused.*

**ANSWER:** The United States lacks information or knowledge sufficient to form a belief as to the truth of this paragraph.

11. *Through that conversation and her other efforts to locate the scammer, Ms. Singh conclusively confirmed on December 22, 2017, that she had been defrauded.*

**ANSWER:** The United States lacks information or knowledge sufficient to form a belief as to the truth of this paragraph.

12. *On December 26, 2017, she went to the 105th Precinct of the New York City Police Department ("NYPD") to report the crime.*

**ANSWER:** The United States lacks information or knowledge sufficient to form a belief about the truth of this paragraph.

13. *On December 29, 2017, she made a further attempt to file a report at the same precinct.*

**ANSWER:** The United States lacks information or knowledge sufficient to form a belief about the truth of this paragraph.

14. *On both occasions, however, the NYPD officer with whom she spoke dismissed her and refused to prepare a formal crime report. The NYPD officer informed Ms. Singh that the chances of identifying the perpetrator or recovering her stolen money was extremely unlikely and that the precinct's resources were primarily allocated to violent crime investigations.*

**ANSWER:** The United States lacks information or knowledge sufficient to form a belief about the truth of this paragraph.

15. *Only after several more follow-up visits did the NYPD finally, in early 2018, file a report, case # 2018-0296. An NYPD Detective visited Ms. Singh's residence to take her statements.*

**<u>ANSWER</u>:** Admit that the plaintiff filed a police report with the NYPD in June 2018. The United States lacks information or knowledge sufficient to form a belief about the truth of the rest of this paragraph.

16. *During his visit, the detective instructed Ms. Singh that online scams were commonly carried out by foreign persons and that Ms. Singh should not expect to recover her stolen funds. The detective maintained ongoing communication with her about her complaint.*

**<u>ANSWER</u>:** The United States lacks information or knowledge sufficient to form a belief about the truth of this paragraph.

17. *On March 26, 2018, Ms. Singh also filed a complaint, under complaint # 180326-2980671, with the Consumer Financial Protection Bureau ("CFPB") regarding JPMorgan Chase Bank's transfer of her $100,000 to an account determined to be controlled by a scammer.*

**<u>ANSWER</u>:** The United States lacks information or knowledge sufficient to form a belief about the truth of this paragraph.

18. *Since Ms. Singh's complaint involved criminal fraud, her theft report also was referred to the United States Secret Service ("USSS"), under case # 108813306802.*

**<u>ANSWER</u>:** Admit.

19. *On April 22 and May 2, 2018, Ms. Singh also contacted the support team of Shaadi, the dating application through which she met the scammer, in an effort to uncover the scammer's real identity and recover her stolen funds.*

**<u>ANSWER</u>:** The United States lacks information or knowledge sufficient to form a belief about the truth of this paragraph.

20. *In September 2018, the NYPD Detective informed Ms. Singh that, despite subpoenaing the perpetrator's email and other records, they were unable to identify him.*

**<u>ANSWER</u>:** Admit that the NYPD Detective informed the plaintiff by email on September 10, 2018, that responses to a bank subpoena did not provide enough information to identify the alleged scammer.

21. *Despite her relentless efforts, and the efforts of the NYPD and the USSS, Ms. Singh did not recover her money.*

**<u>ANSWER</u>:** The United States lacks information or knowledge sufficient to form a belief about the truth of this paragraph.

***Plaintiff's 2017 Form 1040***

22. *On or about April 11, 2018, Ms. Singh filed a timely federal income tax return (Form 1040) for the tax year 2017, reporting the $100,000 IRA withdrawal as income.*

**<u>ANSWER</u>:** Admit.

23. *Her total tax liability was $31,164. After $3,560 in withholdings, Ms. Singh paid the remaining $27,604 plus penalties and interest—totaling $28,069.74—on June 14, 2018.*

**<u>ANSWER</u>:** Admit.

***The IRS 2017 Audit and Plaintiff's Response***

24. *On July 15, 2019, the IRS sent a CP2000, an automated under reporter ("AUR") audit letter, informing Ms. Singh that she had withdrawn $110,700 from her IRS in 2017 and had failed to report $10,700 of her IRA withdrawal.*

**<u>ANSWER</u>:** Admit.

25. *On July 21, 2019, Ms. Singh sent a letter to the IRS in response to the CP2000 AUR audit notice which asserted that she did not owe any income tax on the $10,700 withdrawal because she had rolled that amount over within the 60-day period allowed under the tax law. She*

*provided the IRS copies of brokerages statements confirming the amount and date of both the withdrawal and rollover.*

**<u>ANSWER</u>:** Admit.

26. *On December 2, 2019, the IRS accepted her explanation and closed Ms. Singh's AUR audit as a "no change."*

**<u>ANSWER</u>:** Admit.

27. *The IRS response to the Ms. Singh's audit response is reflected in IDRS, (Integrated Data Retrieval System), the computer system used by the IRS to manage and access taxpayer account information. Ex. B. It entered $0.00 under code 290, "Additional Tax Assessed," acknowledging that Ms. Singh did not owe any additional taxes for the 2017 tax year as her $10,700 IRA withdrawal was rolled over within the time prescribed under the law.*

**<u>ANSWER</u>:** Admit.

28. *The IRS treated its AUR audit of Plaintiff's 2017 taxes separately from the Refund Claim at issue in this action.*

**<u>ANSWER</u>:** The United States lacks information or knowledge sufficient to form a belief about the truth of this paragraph.

***Plaintiff's 2017 Tax Refund Claim***

29. *On July 25, 2019, Ms. Singh filed an administrative tax Refund Claim by letter to the IRS, in which she explicitly requested a refund of both the 10% early withdrawal penalty and the income tax she paid on the $100,000 withdrawal because she was defrauded in an online scam. Her Refund Claim states, "I was the victim of an online dating scam and was scammed my entire savings and IRA account." Ex. A.*

**ANSWER:** Deny that the letter qualifies as an administrative claim for refund but otherwise admit.

30. *In addition to other information, her Refund Claim also includes the information about theft report she made with the NYPD. Ms. Singh disclosed that the NYPD was working on her case and provided case # 2018-0296, under her full name, Juliet R. Singh, as well as the contact information for the assigned NYC Police Detective.*

**ANSWER:** Deny that the letter qualifies as an administrative claim for refund but otherwise admit.

31. *In her Refund Claim, Ms. Singh also explicitly requested that the IRS "waive" the 10% penalty and "huge tax" paid, as she was seeking a refund for the tax she paid, ($28,069.74, tax $27,604.00 plus interest $465.74) on the $100,000 IRA withdrawal.*

**ANSWER:** Deny that the letter qualifies as an administrative claim for refund but otherwise admit.

32. *The IRS acknowledged receipt of Ms. Singh's Refund Claim on August 1, 2019. Her 2017 IRS IDRS Tax Account Transcript reflects the following entry on August 1, 2019: Code 917, Transcript as "**Amended tax return or claim forwarded for processing**." Ex. B.*

**ANSWER:** Deny that the letter qualifies as an administrative claim for refund but otherwise admit.

33. *In her Refund Claim, Ms. Singh explained that the NYC Police Department had been unable to recover her losses. Because of this severe hardship, she could not afford to repay the $100,000 withdrawal, lost her job, and was unable to meet her daily financial obligations. She described relying on loans from friends and family and wrote that she had lost "her dignity and my will to live."*

**ANSWER:** Deny that the letter qualifies as an administrative claim. Admit that the letter contains statements consistent with those in this paragraph, but the United States lacks information or knowledge sufficient to form a belief as to the truth of the rest of this paragraph.

34. *In the following months, Ms. Singh made numerous calls to the IRS seeking a determination on her Refund Claim. During the rare occasions in which she reached a live agent over the phone, she was repeatedly advised that the delayed response was due to the COVID-19 pandemic, as IRS agents were not in the office to process paper returns.*

**ANSWER:** Deny that the letter qualifies as an administrative claim for refund. The United States lacks information or knowledge sufficient to form a belief about the truth of the rest of this paragraph.

35. *Indeed, the COVID-19 pandemic left the IRS with an unprecedented backlog—at its peak, more than 12 million returns and pieces of correspondence sat unopened, delaying refunds for millions of taxpayers.*

**ANSWER:** The United States lacks information or knowledge sufficient to form a belief about the truth of this paragraph.

36. *Of particular relevance here, the IRS also carried a massive backlog of amended returns. At the start of 2022, more than 3.6 million amended returns remained unprocessed, compounding delays for taxpayers who had timely filed claims for refund.*

**ANSWER:** The United States lacks information or knowledge sufficient to form a belief about the truth of this paragraph.

37. *Although the agency made gradual progress, even by late 2023 nearly 1.9 million amended-return and correspondence cases were still unresolved. These persistent delays drew*

*scrutiny in congressional hearings, where lawmakers pressed IRS leadership on the consequences for taxpayers and the need for systemic reform.*

**ANSWER:** The United States lacks information or knowledge sufficient to form a belief about the truth of this paragraph.

38. *Ms. Singh wrote three letters to the IRS in 2021, dated August 9, 16, and 31. She provided the same information included in her Refund Claim, Ex. A., and explained that she had not yet received a decision from the IRS.*

**ANSWER:** Admit that the IRS has a record of only receiving a letter from the plaintiff dated August 16, 2021. The United States lacks information or knowledge sufficient to form a belief about the truth of the rest of this paragraph.

39. *In these three letters, Ms. Singh notified the IRS that the USSS was investigating her case and provided the case number. She also provided the office and contact information for the USSS Special Agent investigating her case.*

**ANSWER:** Admit that the letter dated August 16, 2021, that the IRS received contains statements that the U.S. Secret Service was investigating her case and provided contact information for the investigating agent. The United States lacks information or knowledge sufficient to form a belief about the truth of the rest of this paragraph.

40. *The IRS sent two letters (LTR 2645C) dated September 24 and December 14, 2021, in which the IRS affirmed it would send a complete response within ninety days and that it did not need any further information from her. However, Ms. Singh never received a response from the IRS in 2021.*

**ANSWER:** Admit.

41. *After waiting for approximately six months, Ms. Singh wrote another three letters to the IRS, dated May 11 and 30, and June 20, 2022. She attached the IRS letter 2645C, dated December 14, 2021, to her letters, and requested a determination from the IRS regarding her Refund Claim.*

**ANSWER:** Admit that the IRS has a record of only receiving letters dated May 11, 2022, and June 20, 2022. The United States lacks information or knowledge sufficient to form a belief about the truth of the rest of this paragraph.

42. *The IRS sent Ms. Singh another letter, dated August 24, 2022, stating, "We're working on your account. However, we need an additional 60 days to send you a complete response on what action we are taking on your account. We don't need any further information from you right now."*

**ANSWER:** Admit that the IRS sent the plaintiff a LTR 2645C on that date and that it contains the statement.

43. *Finally, on September 19, 2022, three years after she filed her Refund Claim, the IRS provided Ms. Singh with a response in a Letter 916C. The information at the top of the letter acknowledges receipt Ms. Singh's 2017 tax Refund Claim as follows, "Date claims received: July 25, 2019." Ex. C.*

**ANSWER:** Admit that the IRS issued Letter 916C to the plaintiff on September 19, 2022, in reference to the plaintiff's July 25, 2019 submission to the IRS. The United States lacks information or knowledge sufficient to form a belief about the truth of this paragraph.

44. *An IRS Letter 916C is formally titled Claim Incomplete for Processing; No Consideration. This letter is sent when the IRS needs additional information to process a*

*taxpayer's refund claim. The letter must advise the taxpayer why the claim cannot be considered at that time and what further action is required.*

**<u>ANSWER</u>:** Admit the first two sentences of this paragraph but aver that the letter is not only issued in reference to refund claims. The United States lacks information or knowledge sufficient to form a belief about the truth of the rest of this paragraph

45. *The Letter 916C advised Ms. Singh that she should file an amended return with documentation that supports a reduction in tax.*

**<u>ANSWER</u>:** Deny that the Letter 916C advises the plaintiff specifically to file a refund claim and aver that the Letter 916C generally advises that "the law allows you to file a claim for a refund of taxes you have paid. However, the law doesn't allow you to file a claim to reduce the tax you owe" and that "an amended return with documentation that supports a reduction in the tax [the plaintiff owes]" should accompany any appeal of the IRS's decision.

46. *Per the IRS's instructions in their Letter 916C, Ms. Singh promptly filed a 2017 Form 1040-X, Amended U.S. Individual Income Tax Return, together a letter setting forth, once again, the factual circumstances that led to her being the victim of an internet scam, and other supporting documents. ("Amended Return"). Her Amended Return requested a refund of $30,601.*

**<u>ANSWER</u>:** Admit.

47. *Ms. Singh makes clear in the letter attached to her Form 1040-X that this is the first response she has received from the IRS since her initial Refund Claim filed in 2019.*

**<u>ANSWER</u>:** Admit.

48. *The IRS entered her Amended Return on its IDRS Tax Account Transcript as Code 977, "**Amended return filed**," with a date of August 1, 2019. Ex. B*

**ANSWER:** Admit.

49. *The August 1, 2019, date on her Tax Account Transcript confirms that the IRS treated the Amended Return as the additional information and/or supplement needed to process Ms. Singh's Refund Claim, which they had requested in its Letter 916C.*

**ANSWER:** The United States lacks information or knowledge sufficient to form a belief about the truth of this paragraph.

50. *On August 15, 2023, the IRS issued Ms. Singh a Letter 105C—a formal notice of claim disallowance—denying her Refund Claim as untimely. Ex. D. It disregarded the agency's prior acceptance and acknowledgment of her timely administrative Refund Claim, dated July 25, 2019, see Exs. B and C, and ignored that any delay was entirely the result of its own inaction.*

**ANSWER:** Admit that the IRS disallowed the plaintiff's refund claim, made on her October 19, 2022 amended return for the 2017 tax year, as untimely. The United States lacks information or knowledge sufficient to form a belief about the truth of the rest this paragraph.

51. *The IRS never investigated the substance of Ms. Singh's Refund Claim. The IRS based its denial solely on the statute of limitations under I.R.C. § 6511(a), notwithstanding that: Ms. Singh had timely submitted her administrative Refund Claim on July 25, 2019; that the IRS received and processed it as an amended return/refund claim on August 1, 2019; that its subsequent Letter 916C expressly instructed her on how to formalize that timely Refund Claim by filing an amended return; and that it treated her Amended Return as received on August 1, 2019.*

**ANSWER:** Admit that the IRS did not investigate the substance of the plaintiff's refund claim and that the disallowance was based on the statute of limitations under 26 U.S.C. § 6511(a). The United States lacks information or knowledge sufficient to form a belief about the truth of the rest this paragraph.

Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JOSHUA WU
Deputy Assistant Attorney General
Tax Litigation Branch

*/s/ Daniel M. Caves*

DANIEL M. CAVES
Trial Attorney
Civil Division, Tax Litigation Branch
U.S. Department of Justice
P.O. Box 55
Washington, D.C. 20044
202-514-6058 (v) | 202-514-5238 (f)
Daniel.M.Caves@usdoj.gov

Of Counsel:

Joseph Nocella, Jr.
U.S. Attorney